Dear Mr. Lynch:
This office is in receipt of your recent request for an opinion of this office regarding the Department of Environmental Quality's ("DEQ") waste tire program.
We understand that your office was directed by the State Senate, pursuant to Senate Resolution No. 73, to investigate DEQ's handling of the waste tire remediation program. Subsequently, your office issued a report regarding DEQ's waste tire loan program. Your report pertinently states:
 "A $500,000 loan by the Department of Environmental Quality (DEQ) to a waste tire processing company was made in violation of the law creating the waste tire disposal program. The agency failed to adopt rules in accordance with the law that permits establishment of an incentive allowance to help rid the state of piles of waste tires . . . DEQ implemented a loan program for tire processors without properly publishing rules and obtaining legislative approval as required by DEQ's enabling statute and the Administrative Procedures Act . . . DEQ implemented a loan program for tire processors without publishing regulations and guidelines in the Louisiana Register . . . DEQ failed to obtain legislative approval of rules governing implementation of the program as required by law."
Mr. Filmore P. Bordelon, III, for William A. Kucharski, Secretary of DEQ, responded to these findings in a letter attached to your report (the "Kucharski Response"). Therein DEQ asserts that:
 ". . . the loan program has been properly established and is permitted by law. This incentive program was authorized by legislation."
You have asked this office to address three questions:
"(1) Was DEQ authorized to independently establish and implement the waste tire processors' loan program without publishing notice or rules in the Louisiana Register, without submitting the program to the designated legislative oversight committees, and without otherwise complying with the requirements of La. R.S.30:2418H and the Administrative Procedure Act?"
"(2) Does the DEQ waste tire processors' loan program violate Article VII, Section 14 of the Louisiana Constitution, which prohibits the loans of public funds?"
"(3) Is the outstanding $500,000 loan legal and valid?"
It is the opinion of this office that DEQ acted beyond its authority by independently establishing and implementing a loan program for tire processors. Our research did not reveal any constitutional or statutory grant of authority to DEQ which would allow the Secretary, independent of legislative oversight, to make loans of the public funds which he has been charged to administer. Furthermore, as discussed infra, such a program is constitutionally questionable in light of La. Const. Article VII, Section 14.
We are aware of, but disagree with, the assertion made in the Kucharski Response that:
 "[s]tate statute and the general specific and inherent powers of the Secretary authorize DEQ to do what has been done in this case."
Furthermore, even if the Secretary had the otherwise general or inherent power to independently make such loans, the legislature has clearly preempted such authority in connection with waste tire processing, by enacting R.S. 30:2418 as part of the Solid Waste Reduction and Recycling Law.
R.S. 30:2818, at paragraph G, establishes the Waste Tire Management Fund in the state treasury, which is primarily funded by fees collected by DEQ on the sale of new tires. That provision provides that:
 "[t]he monies of the fund shall be administered by the secretary solely for the purpose of solving the state's waste tire problem."
Paragraph H of the same provision pertinently provides:
 "On or before January 1, 1993 the secretary shall promulgate regulations and guidelines for the administration and enforcement of the waste tire program provided for in this Chapter which shall be subject to legislative review and approval by the Senate Committee on Environmental Quality and the House Committee on Natural Resources. The regulations and guidelines shall provide for but not be limited to:
* * *
 (7) Providing incentives and assistance to waste tire processing facilities, but only if such facilities use, consume, or process the tires so that they may be reused as a raw material, product, or fuel source."
We also note, as you did, that R.S. 30:2011D(1) requires that DEQ's:
 "rules, regulations and standards . . . shall be promulgated in accordance with the procedure set forth in R.S. 49:950 et seq. [the Administrative Procedure Act]."
In accordance with the Administrative Procedure Act (the "APA"), a "rule" means:
 "any agency statement, guide, or requirement for conduct or action"
and includes:
 "any provision for . . . the attainment or loss of preferential status".
It seems clear to us that the criteria pursuant to which DEQ has determined loans or assistance would be provided to applicants could only be determined by "rules" and "rulemaking" as same are defined by the APA (R.S. 49:951). As such, the rules would be required to be adopted in accordance with the APA.
Based upon the foregoing, our response to each of your specific questions is as follows:
(1) It is the opinion of this office that DEQ was not
authorized to implement or establish a waste tire processors' loan program or any other waste tire remediation program without publishing notice as well as rules in the Louisiana Register, without submitting the program to the designated legislative oversight committees, and without otherwise complying with the requirements of R.S. 30:2418H and the APA.
(2) La. Const. Art. VII, Sec. 14 pertinently provides:
 "Except as otherwise provided by this constitution, the funds . . . of the state or any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private." (Emphasis supplied).
The waste tire processor's loan program is in conflict with this constitutional provision.
If DEQ had instituted the loan program in accordance with the APA, and pursuant to the legislative oversight required by R.S.30:2018H, then the program would be arguably constitutional, as DEQ would then be "obligated" by specific provisions of law to make such loans. However, the program would clearly be subject to constitutional challenge in accordance with La. Const. Art.VII, Sec. 14.
(3) In our opinion, the outstanding $500,000 loan is not legal or valid.
We trust the foregoing to be of assistance. Should you need further information, please do not hesitate to contact us.
Yours very truly,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 By: ______________________________________ JEANNE-MARIE ZERINGUE BARHAM
Assistant Attorney General
RPI:JMZB:jv
Date Received:
Date Released:
Jeanne-Marie Zeringue Barham Assistant Attorney General